ANIL HOMILY,
        Plaintiff,

v.                                         Case No. 04-C-669

JOHN KLUGIEWICZ,[1]
        Defendant,

## DECISION AND ORDER

Plaintiff Anil Homily, who is currently incarcerated at the State Correctional Institution Laurel Highlands in Somerset, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Fifth and Fourteenth Amendment rights under the United States Constitution. The complaint named as defendants two state officials, who were subsequently dismissed, and John Klugiewicz, who is a federal official. Considering plaintiff's pro se status, the complaint was liberally construed as brought under 42 U.S.C. § 1983, which creates a cause of action against state actors only, with respect to the state officials, and under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which recognized a cause of action for violations of civil rights by federal officials, with regard to defendant Klugiewicz.

---

[1]The correct spelling of defendant's name is Klugiewicz. (See October 1, 2004, Declaration of John Klugiewicz.) The complaint identifies him as "Klugewicz." I have amended the caption accordingly.

On July 12, 2004, the case was transferred to this district from the Middle District of Pennsylvania. Defendant Klugiewicz has filed a motion for summary judgment, which I address herein.

## I. BACKGROUND OF THE CASE

### A. Middle District of Pennsylvania

On May 21, 2002, plaintiff, then an inmate at the Smithfield Federal Correctional Institution, Huntington, Pennsylvania, filed the complaint in the United States District Court for the Middle District of Pennsylvania. Plaintiff named as defendants Federal Bureau of Investigation (FBI) Special Agent John Klugiewicz, as well as Joseph Farrell and Jeffrey Biondo of the Pennsylvania State Police.[2] (Compl. at 1.) The complaint alleged that defendant Klugiewicz, while assigned in Arizona, engaged in willful misconduct in violation of plaintiff's Fifth and Fourteenth Amendment rights by directing Farrell and Biondo to contact plaintiff's business associates regarding criminal charges allegedly pending against plaintiff in order to damage his reputation and undermine his business transactions.

Plaintiff alleged that in 1995 he was attempting to negotiate various land deals in Prescott, Arizona; Nassau, Bahamas; and Au Sable Forks, New York. In October of that same year, all of the sellers of the properties abruptly withdrew from negotiations with plaintiff. Plaintiff alleged that on October 5, 1995, he had a telephone conversation with Seymour Harris, the owner of the property in the Bahamas, during which Harris stated, "We've heard some rather disturbing news about you from an investigator of the

---

[2]Defendant Klugiewicz clarifies that Biondo and Farrell are actually Pennsylvania State Troopers. (Def.'s Am. Br. in Supp. of Mot. for Summ. J. at 1.) However, the discrepancy is immaterial since both parties agree that Biondo and Farrell were state actors at all times relevant. (Id. at 1 n.1.)

2

Pennsylvania State Police . . . Biondo and Farrell . . . I'm afraid we can no longer do business with you." (Compl. ¶ 17.) Plaintiff further alleged that in November of 1995, an individual named Walraven withdrew a substantial amount of money from a land deal because he could not be involved with "someone wanted for murder." (Compl. ¶ 18.) Plaintiff claimed that in May of 2000 he found documents indicating that defendant Klugiewicz instructed Biondo and Farrell to contact plaintiff's associates and acquaintances and inform them that he was involved in various nefarious activities. Plaintiff contended that the allegations against him were made by Klugiewicz, Biondo and Farrell between September 20, 1995 and October 20, 1995.

On July 24, 2003, United States District Judge John E. Jones III, adopted in part and rejected in part the report and recommendation of United States Magistrate Judge Malachy E. Mannion. Judge Jones granted defendants Biondo and Farrell's motion to dismiss, concluding that plaintiff's claims against them were barred by the statute of limitations. In addition, Judge Jones granted defendant Klugiewicz's motion to dismiss, finding that plaintiff failed to effect proper service on Klugiewicz. The court rejected Klugiewicz's argument that plaintiff's claims against him were barred by the statute of limitations.

On August 5, 2003, plaintiff filed a motion for relief from the July 24, 2003 order to the extent that it dismissed the action against defendant Klugiewicz. The court granted plaintiff's motion on March 9, 2004, and vacated dismissal of the action with respect to defendant Klugiewicz only.

On April 1, 2004, Magistrate Judge Mannion denied defendant Klugiewicz's motion for leave to file a second motion to dismiss the complaint. In that same order, Judge Mannion directed that the parties brief the issue of venue, "in light of the fact that defendant

3

Klugiewicz is the only remaining defendant in this action; at the time of the allegations against him defendant Klugiewicz worked and resided in Arizona; at the current time defendant Klugiewicz works and resides in Wisconsin; and defendant Klugiewicz has never worked or resided in Pennsylvania." (Order of April 1, 2004, at 2.)

On July 12, 2004, Judge Jones adopted Judge Mannion's report and recommendation transferring venue to the Eastern District of Wisconsin, and directed the Clerk of Court to transfer the case to this district.

**B.    Eastern District of Wisconsin**

On July 28, 2004, a scheduling order was issued setting October 29, 2004, as the deadline for the completion of discovery, and November 30, 2004, as the deadline for filing dispositive motions. On July 30, 2004, per margin order, I granted defendant's motion for 60 days to answer, respond, or otherwise plead, cancelled the scheduling order, and noted that a new scheduling order would be entered when the answer was received.

Defendant filed a motion for summary judgment on September 27, 2004. On October 1, 2004, defendant filed an amended motion for summary judgment along with a letter requesting that the court substitute the latter motion for the former because of typographical errors and an incomplete citation. Defendant's request will be granted and defendant's September 27, 2004, motion for summary judgment will be denied as moot.

Plaintiff filed a response to defendant's motion on October 18, 2004, and on October 29, 2004, defendant filed his reply. Plaintiff subsequently filed a "response" on December 27, 2004, and a "reply" on January 3, 2005. The motion is now ready for decision.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may satisfy its initial burden by pointing out that there is an absence of evidence to support the non-moving party's case. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

## III. FACTS

Defendant Klugiewicz has been employed as a Special Agent for the FBI from September 22, 1986, to the present. (Declaration of John Klugiewicz [Klugiewicz Decl.] ¶ 2.) He was assigned to the FBI's Phoenix, Arizona Division from approximately 1987 to 1997. (Id.) In 1995, as part of his official duties as an FBI Agent, Klugiewicz was part of a joint Federal-State investigation into crimes allegedly committed by the plaintiff, Anil Homily, including fraud, murder and using false social security numbers. (Id. at ¶ 3.)

In support of his claim that defendant Klugiewicz violated his rights, plaintiff relies on two pages of a report prepared by Pennsylvania State Trooper Biondo.[3] This report, which is also attached to Defendant's Proposed Findings of Fact, is entitled "Homicide Investigation Action Report." It was completed by "Tpr JP Biondo" on October 20, 1995, and states in full:

> This RO was contacted by SA KLUGEWICZ [sic] of the Phoenix, AZ, FBI office. SA KLUGEWICZ related to RO that he was concerned that HOMILY would flee Mexico. SA KLUGEWICZ advised that HOMILY still had business associates in the United States that were currently negotiating a land deal for properties in Prescott, AZ, Au Sable Forks, NY, and Nassau, Bahamas. SA KLUGEWICZ stated that HOMILY had been using a false social security number during these business transactions and it was his belief that once HOMILY secured significant capital from his business associates he would disappear.

---

[3]In his complaint, plaintiff referred to "attached exhibits" (Compl. ¶ 23) – presumably the Biondo report. However, he failed to attach any exhibits to the complaint. Nevertheless, it is clear that plaintiff referred to Biondo's report, which plaintiff has attached to his other pleadings, to wit: "Plaintiff's Reply To The Defendants' Motions To Dismiss" (Docket 12); "Plaintiff's Response to the Defendants' Reply Brief in Support of their Motion to Dismiss" (Docket 32) and "Brief in Opposition To The Report And Recommendation of Magistrate Mannion" (Docket 38). For purposes of clarity, the two pages of Trooper J.P. Biondo's report will be referred to as "Plaintiff's Exhibit 1."

6

> SA KLUGEWICZ advised RO that he'd attempted to secure HOMILY by contacting the Procuraduria General de la Republica (PGR), and the Transito Police in Manzanillo, Mexico. SA KLUGEWICZ stated that both agencies were uncooperative. SA KLUGEWICZ suggested that RO contact HOMILY's business associates and advise them that HOMILY is wanted for murder, and should any further business transactions occur, they would be arrested for conspiracy to murder, obstruction of justice, and harboring a fugitive.
>
> Form attached to this report.

(Pl.'s Ex. 1 at 1.) The attached form, also completed by Biondo and also dated October 20, 1995, states, "RO contacted Robert WALRAVEN to advise him that he could be implicated in a murder that Anil HOMILY committed in Pennsylvania, therefore, should any business relations with HOMILY continue, including, phone calls, faxes, or money transactions, WALRAVEN would be arrested for harboring a fugitive wanted for murder." (Id. at 2.) Defendant has never had supervisory or other authority over Trooper Biondo. (Klugiewicz Decl. ¶ 5.)

A warrant for plaintiff's arrest was issued by the United States District Court of Arizona on June 14, 1996, for using false social security numbers. (Klugiewicz Decl. ¶ 6, Ex. B.) In addition, plaintiff was convicted of murder in the third degree on June 22, 2000, and was sentenced to a term of imprisonment of not less than ten years nor more than twenty years. (Klugiewicz Decl. ¶ 4, Ex. A.)

The criminal complaint charging plaintiff with fraudulent use of social security numbers was subsequently dismissed as part of an agreement with the government after plaintiff admitted the offense in a probation revocation hearing. (Second Declaration of John Klugiewicz [2d Klugiewicz Decl.] ¶¶ 4-8, Ex. C.) Dismissal was premised upon the following language in the agreement:

> Upon Mr. Homily being sentenced in the Middle District of Pennsylvania on the new amended violation petition, this office agrees not to refile the criminal complaint nor seek indictment for the charge set forth in the complaint. This ultimately renders the dismissal of the complaint in this district to be with prejudice.
>
> The parties agree that the maximum term of imprisonment which can be imposed upon Mr. Homily, as a result of his admitting the violations set forth in the new amended petition, is 24 months.

(Id.)

## IV. DISCUSSION

Defendant first contends that plaintiff does not state a claim under 42 U.S.C. § 1983 or the Fourteenth Amendment. Plaintiff does not dispute this. Since Biondo and Farrell, the two state official defendants, have been dismissed and the only remaining defendant is a federal officer, defendant is correct that plaintiff's only remaining claim in this case falls under the Fifth Amendment, which is the federal action counterpart to the Fourteenth Amendment. See Paul v. Davis, 424 U.S. 693, 702 n.3 (1976) ("[If] defamation by a state official is actionable under the Fourteenth Amendment, it would of course follow that defamation by a federal official should likewise be actionable under the cognate Due Process Clause of the Fifth Amendment."); see also Benson v. United States, 969 F. Supp. 1129, 1135 (N.D. Ill. 1997) ("Actions of the federal government and its officials are beyond the purview of section 1983, which applies only to state actors acting under color of state law."). Thus, defendant's motion for summary judgment with respect to plaintiff's claims under § 1983 and the Fourteenth Amendment will be granted.

Regarding the remaining claim under Bivens and the Fifth Amendment, defendant Klugiewicz argues that the doctrine of qualified immunity protects him from suit. Specifically,

8

defendant claims that the facts alleged by plaintiff do not identify the deprivation of a constitutional right and, even assuming that a constitutional right exists, it was not clearly established at the time of defendant's actions.

Plaintiff contends that defendant failed to respond to his requests for discovery and that granting summary judgment without completion of discovery would prejudice his ability to prosecute this matter. Plaintiff further contends that "the factual issue of Klugiewicz using his governmental authority to impede Homily's lawful business endeavors is ripe for a jury's determination." (Pl.'s Resp. at 4.) He asserts that the "facts illustrate that Homily was not using any false Social Security numbers or committing fraud, his conviction is based on mere conjecture, and engaging in lawful business is protected by the Bill of Rights." (Id. at 5.) Plaintiff concludes that, "1) there is a constitutional right to do business without baneful Governmental interference; 2) this right has been protected for over 140 years; thus, Klugiewicz had ample warning that his conduct would violate clearly established constitutional rights; and 3) summary judgment should not be granted in light of the genuine issues of material fact in dispute." (Id. at 8.)

In his reply, defendant contends that even if all of the facts plaintiff asserts are true, defendant remains immune from suit under the doctrine of qualified immunity. Moreover, defendant asserts that, "[c]ontrary to Homily's assertions, Homily ultimately admitted to fraudulently using a false social security number. Exhibits C, D, E, F." (Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 2.) Defendant adds that "the information Klugiewicz provided to Biondo was true. Exhibits C, D, E, F. A reasonable agent would have believed it was important to share information about Homily's illegal activities with other law enforcement officers in an effort to locate Homily and protect members of the community who may be

9

victims of the crime." (Id.)  Defendant states that plaintiff's claim that defendant's defamatory statements led to a loss of business opportunities does not rise to the level of a constitutional violation. (Id. citing Paul v. Davis, 424 U.S. 693, 701 (1976)).  Finally, defendant contends that the Bill of Rights does not provide plaintiff with a cause of action and defendant's status as a federal agent did not supercede the authority of the Pennsylvania State Troopers.

When government officials perform discretionary functions, they are entitled to a qualified immunity defense that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-step test for determining whether qualified immunity exists.  The threshold question is whether "[t]aken in the light most favorable to the party asserting the injury," the "facts alleged" show the officer's conduct violated a constitutional right. Id. at 201.  In the event that no constitutional right would have been violated if the allegations were established, there is no need for further analysis of the qualified immunity issue. Id.  However, if a constitutional violation could be demonstrated based on a favorable view of the plaintiff's submissions, the analysis proceeds to the second step, which requires that the court determine whether the right was clearly established. Id.  Such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. [If] the law did not put the officer on notice that his conduct would be clearly unlawful, summary

10

judgment based on qualified immunity is appropriate." Id. at 202; see also Malley v. Briggs, 475 U.S. 335, 341 (1986) (holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Therefore, I must first decide whether plaintiff has asserted a violation of a constitutional right. Generally, the Constitution does not protect a person's interest in reputation. However, a plaintiff may state a claim for deprivation of a liberty interest by alleging damage to his reputation so long as he also asserts that the government altered a "right or status" he "previously held under state law." Paul v. Davis, 424 U.S. 693, 708, 711 (1976); see also Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972); Townsend v. Vallas, 256 F.3d 661, 669 (7th Cir. 2001). This has come to be known as the "reputation plus" standard of Paul v. Davis, in which the Supreme Court held that injury to reputation, without more, does not implicate due process. See Paul, 424 U.S. at 712; see also Siegert v. Gilley, 500 U.S. 226, 234 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation").

In Paul, the plaintiff's photograph was included by local police chiefs in a "flyer" of "active shoplifters," after the plaintiff had been arrested for shoplifting. 424 U.S. at 696. The plaintiff's guilt had not yet been resolved at the time of the posting, and the charge was later dismissed. Id. The plaintiff filed suit against the police chiefs under § 1983, alleging that the officials' actions inflicted a stigma to his reputation that would seriously impair his future employment opportunities, and thus deprived him under color of state law of liberty interests protected by the Fourteenth Amendment. Id. The Court rejected the plaintiff's claim, holding that injury to reputation alone was not a "liberty" interest protected under the Fourteenth Amendment. Id. at 708-09. The Court also rejected the plaintiff's contention that

11

Case 2:04-cv-00669-LA    Filed 09/08/05    Page 11 of 16    Document 100

his claim fell under the "right to privacy guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments":

> The activities detailed as being within this definition were ones very different from that for which [plaintiff] claims constitutional protection, matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.
>
> [Plaintiff's] claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this matter.

Id. at 713.

Similarly, in Siegert, the plaintiff brought a Bivens action against his former supervisor, alleging that the former supervisor, in response to a request for information on job performance, wrote a defamatory letter depriving him of a constitutionally protected liberty interest without due process of law. The Court held that the plaintiff failed to allege the violation of a clearly established constitutional right. 500 U.S. at 231. The Court reasoned:

> The facts alleged by [plaintiff] cannot, in the light of our decision in Paul v. Davis, be held to state a claim for denial of a constitutional right. . . . The alleged defamation was not uttered incident to the termination of [plaintiff's] employment by the hospital, since he voluntarily resigned from his position at the hospital, and the letter was written several weeks later. The statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects. But the plaintiff in Paul v. Davis similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action.

12

Id. at 234; see also Hojnacki v. Klein-Acosta, 285 F.3d 544, 548 (7th Cir. 2002) (stating that "mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment").

These cases ostensibly doom plaintiff's claim. However, plaintiff makes two arguments in an effort to save it. First, he asserts that through discovery he could have demonstrated that "Klugiewicz, obviously knows that submitting the bogus complaint for fraud and intent to deceive with false Social Security numbers, to this court would have let on that his present denial of violating Homily's 'Liberty' rights is a ruse designed to Cloud this Court's evaluation. Specifically, Klugiewicz is failing to tell this Court that the charges that led to the issuing of the warrant, were dismissed with prejudice." (Pl.'s Resp. to Mot. for Summ. J. at 2.) Had "discovery been complied with," plaintiff also could have shown: "Klugiewicz has failed to relate to this Court the facts that although numerous Grand Jury's [sic] were convened charging Homily with Murder and other Charges, the[y] all declined to indict Homily for said charges." (Id. at 3.) Plaintiff further asserts that "despite Klugiewicz being able to show this Court a State Commitment document, it is noteworthy to express to this Court that Homily presently has an appeal pending in Pennsylvania's Superior Court, and Homily expects a reversal of the conviction due to the State's unethical practices in a Court of Law." (Id.) Plaintiff also asserts that "it certainly is a fact that that information i.e., the fraudulent use of Social Security numbers is not true." (Id.)

The argument seems to be that because Klugiewicz's statements can be shown to be false, plaintiff can prevail in his suit. The argument might be valid as a matter of state defamation law, but the Supreme Court has held that even false statements that damage

13

reputation do not violate the Constitution. See Paul, 424 U.S. at 712. In any event, although it is undisputed that defendant Klugiewicz advised Biondo that plaintiff was using false social security numbers and was wanted for murder, and "suggested" to Biondo that plaintiff's business associates be advised that plaintiff was wanted for murder, (Pl.'s Ex. 1 at 1), it is also undisputed that plaintiff was in fact wanted for murder, that on June 22, 2000, he was convicted of third degree murder, and that plaintiff admitted the use of false social security numbers in the revocation proceeding.

Plaintiff's second contention is that defendant's conduct damaged his reputation and caused the loss of his business opportunities. However, courts have rejected the notion that Paul's "reputation plus" standard is met by proof of lost business opportunities. See, e.g., Neu v. Corcoran, 869 F.2d 662, 669 (2d Cir. 1989) (finding defamatory statements resulting in inability to engage in chosen business insufficient); Sturm v. Clark, 835 F.2d 1009, 1013 (3d Cir. 1987) (finding defamatory statement resulting in loss of business and income insufficient); Mosrie v. Barry, 718 F.2d 1151, 1158 (D.C. Cir. 1983) (finding economic injury to business insufficient); Havas v. Thornton, 609 F.2d 372, 375 (9th Cir. 1979) (finding statements impugning business practices in conspiracy to drive plaintiff out of business insufficient); Dower v. Dickinson, 700 F. Supp. 640, 647 (N.D.N.Y. 1988) (finding defamatory statements by township supervisor impairing plaintiff's business opportunities insufficient); see also Siegert, 500 U.S. at 234 (finding insufficient statements that would "undoubtedly damage the reputation of one in his position, and impair his future employment prospects"). Thus, plaintiff fails to allege deprivation of a protected liberty interest.

14

Moreover, discovery would not help plaintiff. Even if he could obtain evidence casting doubt on Klugiewicz's statements, this does not change the fact that plaintiff's allegations do not implicate the Constitution.

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.

Siegert, 500 U.S. at 232.

Finally, even if plaintiff could show that defendant deprived him of a protected liberty or property interest, he has not shown that such right was clearly established at the time defendant acted. Plaintiff cites Booth v. Illinois, 184 U.S. 425 (1902) and Munn v. Illinois, 94 U.S. 113 (1876) for the proposition that the Constitution protects one's right to do business without governmental interference. However, in both of these cases the Court upheld against Fourteenth Amendment challenges legislation that impeded the plaintiffs' ability to engage in certain businesses. Plaintiff fails to cite any case clearly establishing that he had a protected liberty or property right in engaging in business transactions free from the sort of interference he alleges defendant perpetrated.

Because he is entitled to qualified immunity, defendant's motion for summary judgment will be granted.

15

Case 2:04-cv-00669-LA   Filed 09/08/05   Page 15 of 16   Document 100

## V. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for summary judgment (Docket #84) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendant's amended motion for summary judgment (Docket #89) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 8 day of September, 2005.

/s_____
LYNN ADELMAN
District Judge